**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHEYENNE DESERTRAIN; STEVE JACOBS-ELSTEIN; BRADFORD ECKHART; PATRICIA WARIVONCHIK; LEROY BUTLER; WILLIAM CAGLE; CHRIS TAYLOR, *Plaintiffs-Appellants*, | No. 11-56957 D.C. No. 2:10-cv-09053-RGK-PJW |
| v. | OPINION |
| CITY OF LOS ANGELES, a municipal entity; JON PETERS; RANDY YOSHIOKA; JASON PRINCE; BRIANNA GONZALES, *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
December 5, 2013—Pasadena, California

Filed June 19, 2014

Before: Harry Pregerson, Marsha S. Berzon,
and Morgan Christen, Circuit Judges.

Opinion by Judge Pregerson

# SUMMARY[*]

## Civil Rights

The panel reversed the district court's summary judgment in an action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of Los Angeles Municipal Code Section 85.02, which prohibits the use of a vehicle "as living quarters either overnight, day-by-day, or otherwise."

The panel held that Section 85.02 provides inadequate notice of the unlawful conduct it proscribes, and opens the door to discriminatory enforcement against the homeless and the poor.  Accordingly, the panel held that Section 85.02 violates the Due Process Clause of the Fourteenth Amendment as an unconstitutionally vague statute.

## COUNSEL

Carol A. Sobel (argued), Law Office of Carol A. Sobel, Santa Monica, California, for Plaintiffs-Appellants.

Blithe S. Bock (argued), Carmen A. Trutanich, Amy Jo Field, Lisa S. Berger, City Attorney's Office, Los Angeles, California, for Defendants-Appellees.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## OPINION

PREGERSON, Circuit Judge:

This 42 U.S.C. § 1983 case concerns the constitutionality of Los Angeles Municipal Code Section 85.02, which prohibits use of a vehicle "as living quarters either overnight, day-by-day, or otherwise." Plaintiffs include four homeless individuals who parked their vehicles in the Venice area of Los Angeles and were cited and arrested for violating Section 85.02. Defendants are the City of Los Angeles and individual LAPD officers. Plaintiffs argue that Section 85.02 is unconstitutionally vague on its face because it provides insufficient notice of the conduct it penalizes and promotes arbitrary and discriminatory enforcement. We agree.

## FACTUAL BACKGROUND

### I.  Section 85.02 and the Venice Homelessness Task Force

In 1983, the City of Los Angeles enacted Municipal Code Section 85.02:

> USE OF STREETS AND PUBLIC PARKING LOTS FOR HABITATION.
>
> No person shall use a vehicle parked or standing upon any City street, or upon any parking lot owned by the City of Los Angeles and under the control of the City of Los Angeles or under control of the Los Angeles County Department of Beaches and Harbors, as living quarters either overnight, day-by-day, or otherwise.

On September 23, 2010, Los Angeles officials held a "Town Hall on Homelessness" to address complaints of homeless individuals with vehicles living on local streets in Venice. Present at the meeting were a member of the City Council, the Chief of the LAPD, the Chief Deputy to the City Attorney, and the Assistant Director of the Los Angeles Bureau of Sanitation. City officials repeated throughout the meeting that their concern was not homelessness generally, but the illegal dumping of trash and human waste on city streets that was endangering public health. To address this concern, officials announced a renewed commitment to enforcing Section 85.02.

Within the week, the LAPD created the Venice Homelessness Task Force (the "Task Force"). The Task Force's twenty-one officers were to use Section 85.02 to cite and arrest homeless people using their automobiles as "living quarters," and were also to distribute to such people information concerning providers of shelter and other social services.

Defendant Captain Jon Peters ran the Task Force, which included Defendant Officers Randy Yoshioka, Jason Prince, and Brianna Gonzales. Task Force officers received informal, verbal training, as well as internal policy memoranda, on how to enforce Section 85.02. Supervisors instructed officers to look for vehicles containing possessions normally found in a home, such as food, bedding, clothing, medicine, and basic necessities. According to those instructions, an individual need not be sleeping or have slept in the vehicle to violate Section 85.02. Supervisors directed officers to issue a warning and to provide information concerning local shelters on the first instance of a violation,

to issue a citation on the second instance, and to make an arrest on the third.

## II. Enforcement of Section 85.02

Beginning in late 2010, the Task Force began enforcing Section 85.02 against homeless individuals. Four such homeless individuals are Plaintiffs in this case:[1]

Plaintiff Steve Jacobs-Elstein ran his own legal temp company for almost ten years before losing his business and his home in the economic downturn of 2007. He subsequently suffered severe anxiety and depression. He was able to keep his car, a small SUV, and pay for insurance, maintenance, and gas with the $200 he collects each month from General Relief. He kept his few possessions — mainly two computers and some clothes — in his car because he could not afford storage fees.

When Jacobs-Elstein first became homeless, he slept in his car. In mid-2009, an LAPD officer approached Jacobs-Elstein while parked on a city street, warning him that if he

---

[1] Plaintiffs also include four homeless disabled individuals ("Disabled Plaintiffs") who the police cited for violating local parking ordinances from which they are exempt under California law because their vehicles display handicapped license plates and placards. At oral argument, both parties acknowledged that Task Force officers had issued these tickets by mistake, and that these officers were no longer issuing parking tickets to Disabled Plaintiffs. Disabled Plaintiffs seek only injunctive and declaratory relief. Because Disabled Plaintiffs disclaim any argument that the challenged conduct is reasonably likely to recur, their challenge to the parking tickets is moot. *See Bell v. City of Boise*, 709 F.3d 890, 898 (9th Cir. 2013) (the voluntary cessation of challenged conduct moots a case where it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" (internal quotation marks omitted)).

slept in his vehicle at night on public streets he would be arrested. At the time, Jacobs-Elstein was unaware that such conduct was unlawful. He then looked up Section 85.02 on the Internet and, based on what he read and what the officer told him, understood Section 85.02 to mean that he could not sleep in his car on a public street in Los Angeles. He began sleeping at motels and on other private property, and soon obtained permission from a Methodist Church in Venice to sleep in his car while it was parked in the church parking lot, provided he leave the lot by 8:00 a.m. each day. He also registered with the People Assisting The Homeless's "Venice Vehicles to Homes" program, secured a spot on the housing wait lists maintained by the Department of Mental Health and the Los Angeles Housing Authority, and was approved for a Section 8 housing voucher through the Department of Housing and Urban Development.

On the morning of September 13, 2010, Jacobs-Elstein was waiting in his car on a public street for the First Baptist Church of Venice to open so that he could volunteer to serve at the food distribution program, and also receive a meal. That morning, Defendant Officer Gonzales and her partner ordered Jacobs-Elstein out of his car, searched his car, and cited him for violating Section 85.02. The officers provided him no shelter or social services information.

A few weeks later, Jacobs-Elstein was again waiting in his car on a public street for First Baptist to open when Officer Gonzales banged on the driver's side window and told Jacobs-Elstein it was illegal to live in his vehicle. Two weeks later, Gonzales and her partner again spotted Jacobs-Elstein, this time when he was parked legally in the First Baptist parking lot, and yelled at him from across the street that the next time they saw him they would take him to jail.

On the morning of October 31, 2010, Jacobs-Elstein was exiting his car when Officer Gonzales and her partner detained, handcuffed, and arrested Jacobs-Elstein for violating Section 85.02.    The car contained personal belongings, such as boxes and computer equipment, as well as plastic bottles of urine.  Jacobs-Elstein was in custody for about seven hours before being released, after which he borrowed money to get his car out of impoundment.  He had no criminal record before this arrest.

On January 30, 2011, Defendant Officer Yoshioka and his partner cited Jacobs-Elstein again for violating Section 85.02, this time while Jacobs-Elstein was sitting in his car, talking on his cell phone.  Jacobs-Elstein had dog food in the car.  He told Officer Yoshioka the dog food was from a friend whose dog he would later take to the park.  The car also contained salad boxes, water bottles, a portable radio, and bags of clothes.  Jacobs-Elstein showed Officer Yoshioka proof that he resided on private property, and thus was not sleeping in his vehicle.  Officer Yoshioka informed him that he need not sleep in his car to violate Section 85.02.

During this last incident, Officer Yoshioka's partner gave Jacobs-Elstein a "Local Resources Information" pamphlet. This was the first time he was offered any such information. The flyer claimed to provide guidance on how to comply with Section 85.02.  Yet Jacobs-Elstein soon discovered that this information was not helpful to him.  It provided information only on RV parks, where Jacobs-Elstein could not park his car, and shelters, where he could not keep his belongings during the day.

Plaintiff Chris Taylor sells his artwork at a booth on Venice Beach, where he works every day.  In October 2010,

Officer Yoshioka issued a warning to Taylor for sleeping in his small two-door car through the night, in violation of Section 85.02. He then began sleeping on the sidewalk, which is legal. Starting December 1, 2010, Taylor began sleeping at Winter Shelter in Culver City. He rented a storage facility to get his excess property out of the car, though he kept his sleeping bag with him in case he missed the bus to the shelter and had to sleep on the streets.

On the morning of December 18, 2010, Officer Yoshioka and his partner arrested Taylor for violating Section 85.02 and had his car impounded. At the time he was arrested, Taylor was sitting in his car to get out of the rain. The vehicle contained one tin of food, clothing, and a bottle of urine. Taylor informed the officers that he slept at Winter Shelter and not in his car, and that he had an identification card issued by Winter Shelter to prove it. He was arrested nonetheless.

Plaintiff Patricia Warivonchik has lived in Venice for thirty-four years. She is epileptic, and after suffering a significant head injury, is unable to work full time. Because she could no longer afford to pay rent in Venice, but did not want to leave the area, she began living in her RV. Since becoming homeless, Warivonchik has supported herself with part-time jobs and by selling ceramic artwork. She is also a member of a church in Santa Monica where she legally parks her RV at night.

On November 13, 2010, Warivonchik was driving her RV through Venice — taking her artwork to a local fair — when she was pulled over by Officer Yoshioka and his partner for failing to turn off her left blinker. She was not cited for the blinker, but was given a written warning for violating Section

85.02 and told that she would be arrested if ever seen again in Venice with her RV.

Plaintiff William Cagle has been a resident of Venice since 1979. He suffers from congestive heart failure, which causes fluid to build up in his legs, preventing him from walking even short distances. His sole source of income is Social Security, which is not enough to pay both for rent and for the medicine he needs that is not covered by his insurance. Cagle became homeless in 1993, but was able to keep his small van.

In the early mornings of October 17, 2010, and November 22, 2010, Officer Yoshioka and his partner cited and arrested Cagle for violating Section 85.02. Among the items found in Cagle's van were clothing, bedding, boxed food, bottles of medicine, and a portable radio. Cagle explained to the officers that he was not sleeping in his vehicle. Officer Yoshioka's partner responded that sleeping is not the only criteria for violating Section 85.02.

## PROCEDURAL HISTORY

### I.  The Complaint

In their First Amended Complaint, Plaintiffs challenged Section 85.02 under the Fourth, Fifth, and Fourteenth Amendments, various sections of the California Constitution, and several state and federal statutes. Although Plaintiffs alleged that enforcement of Section 85.02 "violates due process," they did not specifically allege that the statute is unconstitutionally vague.

## II. Discovery

The parties proceeded to discovery. Plaintiffs filed a discovery request for "[a]ny and all documents regarding the incident(s) described in the Complaint." On August 22, 2011 — eight days before the discovery cut-off date — Defendants filed their tenth response to Plaintiffs' discovery request. In their response, Defendants for the first time produced copies of internal memoranda instructing officers on how to enforce Section 85.02.

In one memo from 2008, officers were told that any arrest "report must describe in detail observations . . . that establish one of the following — (i) overnight occupancy for more than one night or (ii) day-by-day occupancy of three or more days." The arrest reports for Plaintiffs Jacobs-Elstein, Taylor, and Cagle, however, contained no such observations. In another memo, from 2010, officers were told to "adhere to the 'Four C's' philosophy: Commander's Intent, Constitutional Policing, Community Perspective, and Compassion," with no further details.

On August 26, 2011, Plaintiffs' attorney deposed the Task Force's lead officer, Defendant Captain Jon Peters. Plaintiffs' attorney questioned Captain Peters extensively on whether the Task Force had been given any limiting instructions on how to enforce Section 85.02. Specifically, Plaintiffs' attorney asked about the 2008 memo directing officers to make an arrest only after observing a suspect occupying a vehicle for more than one night or for three consecutive days, an instruction Defendant Officers had ignored. Captain Peters then stated that he disapproved of this memo because he felt it did not offer Task Force officers enough discretion, and had instead instructed officers to

follow the broadly-worded "Four C's" policy. Plaintiffs' attorney asked Captain Peters if he believed a person who slept at a shelter but was found in her vehicle during the day would be in violation of Section 85.02. Captain Peters responded, "I don't believe that they would be violating the law, in my opinion."

On August 30, 2011, Plaintiffs' attorney deposed Defendant Officer Jason Prince. Again, Plaintiffs' attorney repeatedly asked whether Task Force officers had been given any specific training or guidance on how to enforce Section 85.02, particularly if a suspect did not sleep in the vehicle at night. Officer Prince responded, "The totality of the circumstances is what brings us to the conclusion that they're in violation of [Section] 85.02, not where they're sleeping at nighttime."

After those two depositions revealed conflicting views among the enforcing officers as to what Section 85.02 means, Plaintiffs' attorney told Defense counsel that Plaintiffs would now be challenging the constitutionality of Section 85.02 on vagueness grounds. On September 13, 2013, Plaintiffs' attorney emailed Defense counsel confirming that one of Plaintiffs' "primary arguments [is] vagueness," then mentioned three Supreme Court cases discussing the void-for-vagueness doctrine: *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972), *Kolender v. Lawson*, 461 U.S. 352 (1983), and *City of Chicago v. Morales*, 527 U.S. 41 (1999).

## III.    Motions for Summary Judgment

On September 14, 2011, the parties filed cross-motions for summary judgment. In their motion, Plaintiffs argued that "§ 85.02 is unconstitutionally vague and criminalizes

otherwise innocent behavior with insufficient notice as to what constitutes a violation of the law. . . . Section 85.02 is totally devoid of any standards or guidelines to limit police discretion in enforcing a vague law."

On September 26, 2011, Plaintiffs filed their opposition to Defendants' motion for summary judgment, again raising the argument that Section 85.02 is impermissibly vague.

That same day, Defendants filed their opposition to Plaintiffs' motion for summary judgment. As to Plaintiffs' vagueness challenge, Defendants first argued that "Plaintiffs' allegations and theories of liability are confined to those found in the operative complaint," and that Defendants were not on notice that vagueness would be at issue during summary judgment. Defendants went on, however, to defend Section 85.02 against Plaintiffs' vagueness challenge, on the merits.

On October 3, 2011, Plaintiffs filed their reply in support of their motion for summary judgment. In it, Plaintiffs explained to the district court that it was not until eight days before the end of discovery that Defendants disclosed the LAPD's internal memoranda describing the discretion officers had in enforcing Section 85.02. This was "significant since, when faced with a vagueness challenge to a municipal ordinance, courts are required to consider any possible limiting instructions . . . ." Thus, "[D]efendants can hardly complain when they only turned over key documents a week before the end of discovery." Plaintiffs also informed the court that Plaintiffs' attorney had told Defense counsel on August 30, 2011, that Plaintiffs would now be raising a vagueness challenge, and sent an email confirming this on September 13, 2011.

On October 28, 2011, the district court denied Plaintiffs' motion for summary judgment and granted Defendants' motion for summary judgment as to all claims. In a footnote, the district court held that because Plaintiffs failed to raise a vagueness challenge in their First Amended Complaint, "Defendants were not on notice that Plaintiffs would challenge the constitutionality of § 85.02 [on vagueness grounds] and such arguments are inappropriate."

Plaintiffs timely appeal.[2]  We have jurisdiction under 28 U.S.C. § 1291.

**STANDARD OF REVIEW**

We review de novo a grant or denial of summary judgment "to determine whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1339–40 (9th Cir. 1989) (internal citation omitted).

---

[2] Plaintiffs also appeal their claims under the Fourteenth Amendment's right to travel, the Fourth Amendment's protection against unreasonable searches and seizures, and various California statutes. Because Plaintiffs seek only injunctive and declaratory relief, and because we find that Section 85.02 is unconstitutionally vague on its face — a dispositive holding — we need not address Plaintiffs' other claims.

## DISCUSSION

**I.  The district court abused its discretion by not addressing Plaintiffs' vagueness claim on the merits.**

The district court refused to consider the merits of Plaintiffs' vagueness challenge because it was not expressly raised in their First Amended Complaint.  That ruling was an abuse of discretion: Plaintiffs should have been granted leave to amend their First Amended Complaint to add their new claim.

Plaintiffs made their vagueness argument both in their motion for summary judgment and in their opposition to Defendants' motion for summary judgment.  Where plaintiffs "fail[] to raise [a claim] properly in their pleadings, . . . [if] they raised it in their motion for summary judgment, they should [be] allowed to incorporate it by amendment under Fed.R.Civ.P. 15(b)." *Jackson v. Hayakawa*, 605 F.2d 1121, 1129 (9th Cir. 1979).  And "when issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint, '[t]he district court should have construed [the matter raised] as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time.'"  *Apache Survival Coal. v. United States*, 21 F.3d 895, 910 (9th Cir. 1994) (quoting *Johnson v. Mateer*, 625 F.2d 240, 242 (9th Cir. 1980)).

"[L]eave to amend 'shall be freely given when justice so requires,' Fed.R.Civ.P. 15(a), and this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the

opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "The denial of a motion to amend a complaint is reviewed for abuse of discretion." *Id*.

First, there is no evidence of bad faith. Second, there was no undue delay because Plaintiffs only fully understood Defendants' enforcement policies late in the discovery period. Defendants made Plaintiffs aware of the LAPD's 2008 and 2010 internal memoranda — describing the Task Force's policy of enforcement — eight days before the discovery cut-off. As discussed in Part II.B below, the vagueness analysis of a statute includes a review of any limiting interpretation adopted by the enforcement agency. These two memoranda alerted Plaintiffs that Task Force officers had either received ambiguous instructions, or had ignored the explicit directives they had been given. Once Plaintiffs received these key documents, they advanced their vagueness argument.

Third, there was no prejudice to Defendants. The district court found that Defendants were not on notice that Plaintiffs would raise a vagueness challenge at summary judgment. Yet the record shows otherwise. After finally receiving Defendants' 2008 and 2010 internal memoranda, Plaintiffs' attorney repeatedly asked Defendants during their depositions whether Task Force officers had any criteria to limit their enforcement of Section 85.02, especially when it came to suspects — like Plaintiffs — who did not spend the night in their vehicles. This questioning put Defendants on notice that Plaintiffs were concerned with the vagueness of Section 85.02 and the lack of limiting instructions provided by the LAPD.

Once Plaintiffs fully understood Defendants' policy of enforcing Section 85.02, Plaintiffs confirmed that they sought to challenge Section 85.02 on vagueness grounds. Plaintiffs' attorney told Defense counsel weeks before the parties filed cross-motions for summary judgment that Plaintiffs would be raising a vagueness challenge, and repeated this statement by email the day before cross-motions for summary judgment were filed.

By the summary judgment stage, Defendants had ample notice of Plaintiffs' vagueness challenge, and the issue did not require further discovery. Both parties fully argued the vagueness issue in their respective summary judgment briefings. Thus, any claim of surprise or prejudice by Defendants is unpersuasive. *See Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973) (finding no undue prejudice when defendant "was fully prepared to litigate" new issues raised in amended complaint).

Fourth, there is no showing that amendment would be futile. And fifth, Plaintiffs only amended their complaint once, long before they received Defendants' internal memoranda.

The district court should have construed Plaintiffs' vagueness argument at summary judgment as a motion to amend their First Amended Complaint. And given Defendants' late disclosures and inability to make a credible claim of surprise or prejudice, the district court abused its discretion by not amending the First Amended Complaint to conform to the evidence and argument, and by not considering the vagueness claim on the merits.

## II. Section 85.02 is unconstitutionally vague.

A statute fails under the Due Process Clause of the Fourteenth Amendment "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966). A statute is vague on its face when "no standard of conduct is specified at all. As a result, men of common intelligence must necessarily guess at its meaning." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (internal quotation marks omitted).

"Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Morales*, 527 U.S. at 56 (citation omitted). Section 85.02 fails under both standards.

### A. Section 85.02 fails to provide adequate notice of the conduct it criminalizes.

"[T]he purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law." *Id.* at 58. A penal statute cannot require the public to speculate as to its meaning while risking life, liberty, and property in the process. *See Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).

Section 85.02 offers no guidance as to what conduct it prohibits, inducing precisely this type of impermissible speculation and uncertainty. It states that no person shall use a vehicle "as living quarters either overnight, day-by-day, or

otherwise." Yet the statute does not define "living quarters," or specify how long — or when — is "otherwise." We know that under Defendants' enforcement practices sleeping in a vehicle is not required to violate Section 85.02, as Jacobs-Elstein learned, nor is keeping a plethora of belongings required, as Taylor learned. But there is no way to know what *is* required to violate Section 85.02.

Instead, Plaintiffs are left guessing as to what behavior would subject them to citation and arrest by an officer. Is it impermissible to eat food in a vehicle? Is it illegal to keep a sleeping bag? Canned food? Books? What about speaking on a cell phone? Or staying in the car to get out of the rain? These are all actions Plaintiffs were taking when arrested for violation of the ordinance, all of which are otherwise perfectly legal. And despite Plaintiffs' repeated attempts to comply with Section 85.02, there appears to be nothing they can do to avoid violating the statute short of discarding all of their possessions or their vehicles, or leaving Los Angeles entirely. All in all, this broad and cryptic statute criminalizes innocent behavior, making it impossible for citizens to know how to keep their conduct within the pale.

In this respect, Section 85.02 presents the same vagueness concerns as the anti-loitering ordinance held unconstitutional in *Morales*, 527 U.S. 41. There, the Supreme Court found that a Chicago law prohibiting "loitering," which it defined as "remain[ing] in any one place with no apparent purpose," lacked fair notice, as it was "difficult to imagine how any citizen . . . standing in a public place with a group of people would know if he or she had an 'apparent purpose.'" *Id*. at 56–57.

So too here.  It is difficult to imagine how anyone loading up his or her car with personal belongings, perhaps to go on a camping trip or to donate household wares to the Salvation Army, and parking briefly on a Los Angeles street, would know if he or she was violating the statute.  What's worse, even avoiding parking does not seem to be sufficient; Plaintiff Warivonchik was not even parked — she was driving her RV through Venice when she was pulled over and issued a warning.  So, under the Task Force's expansive reading of this already amorphous statute, any vacationer who drives through Los Angeles in an RV may be violating Section 85.02.  As "the [C]ity cannot conceivably have meant to criminalize each instance a citizen" uses a vehicle to store personal property, vagueness about what is covered and what is not "dooms this ordinance."  *Id*. at 57.

Because Section 85.02 fails to draw a clear line between innocent and criminal conduct, it is void for vagueness.

### B.  Section 85.02 promotes arbitrary enforcement that targets the homeless.

A statute is also unconstitutionally vague if it encourages arbitrary or discriminatory enforcement.  *See Papachristou*, 405 U.S. at 162.   If a statute provides "no standards governing the exercise of . . . discretion," it becomes "a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure."  *Id*. at 170 (internal quotation marks omitted).

Arbitrary and discriminatory enforcement is exactly what has occurred here.  As noted, Section 85.02 is broad enough to cover any driver in Los Angeles who eats food or

transports personal belongings in his or her vehicle. Yet it appears to be applied only to the homeless. The vagueness doctrine is designed specifically to prevent this type of selective enforcement, in which a "'net [can] be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of the police and prosecution, although not chargeable in any particular offense.'" *Id*. at 166 (quoting *Winters v. New York*, 333 U.S. 507, 540 (1948) (Frankfurter, J., dissenting)).

Section 85.02 raises the same concerns of discriminatory enforcement as the ordinance in *Papachristou*, 405 U.S. 156. There, the Supreme Court held that a city ordinance prohibiting "vagrancy" — which was applied to "loitering," "prowling," and "nightwalking," among other conduct — was unconstitutionally vague. *Id*. at 158, 163. The Court viewed the ordinance in its historical context as the descendant of English feudal poor laws designed to prevent the physical movement and economic ascension of the lower class. *Id*. at 161–62. In America, such laws had been used to "roundup . . . so-called undesireables," and resulted "in a regime in which the poor and the unpopular [we]re permitted to stand on a public sidewalk . . . only at the whim of any police officer." *Id*. at 170, 171 (internal quotation marks omitted). The Court concluded that "the rule of law implies equality and justice in its application. Vagrancy laws . . . teach that the scales of justice are so tipped that even-handed administration of the law is not possible. The rule of law, evenly applied to minorities as well as majorities, to the poor as well as the rich, is the great mucilage that holds society together." *Id*. at 171.

The City argues that its enforcement goals were motivated by legitimate health and safety concerns. It notes that some

of the plaintiffs were arrested while in cars with garbage, pets, and their personal belongings, and that it was unsafe for plaintiffs to occupy their cars under these circumstances. We do not question the legitimacy of these public health and safety issues, but the record plainly shows that some of the conduct plaintiffs were engaged in when arrested — eating, talking on the phone, or escaping the rain in their vehicles — mimics the everyday conduct of many Los Angeles residents. The health and safety concerns cited by the City do not excuse the basic infirmity of the ordinance: It is so vague that it fails to give notice of the conduct it actually prohibits. As shown by the City's own documents, the different ways the ordinance was interpreted by members of the police department make it incompatible with the concept of an even-handed administration of the law to the poor and to the rich that is fundamental to a democratic society.

Defendants correctly note that they can bring clarity to an otherwise vague statute "through limiting constructions given . . . by the . . . enforcement agency." *Hess v. Bd. of Parole & Post-Prison Supervision*, 514 F.3d 909, 914 (9th Cir. 2008). Defendants point to their 2008 internal memorandum instructing officers making an arrest to first "establish one of the following — (i) overnight occupancy for more than one night or (ii) day-by-day occupancy of three or more days." This memo is irrelevant. First, Defendant Captain Peters, who heads the Task Force, admitted that he disfavored these instructions, and instead advised his officers to adhere to the "Four C's" philosophy, which gave Task Force officers no more guidance than the statute itself. Second, even if Task Force officers had been given the 2008 memo, they did not follow it. Officers did not observe Plaintiffs in their vehicles overnight or for three consecutive days before arresting them.

In sum, Section 85.02 has paved the way for law enforcement to target the homeless and is therefore unconstitutionally vague.

## CONCLUSION

Section 85.02 provides inadequate notice of the unlawful conduct it proscribes, and opens the door to discriminatory enforcement against the homeless and the poor. Accordingly, Section 85.02 violates the Due Process Clause of the Fourteenth Amendment as an unconstitutionally vague statute.

For many homeless persons, their automobile may be their last major possession — the means by which they can look for work and seek social services. The City of Los Angeles has many options at its disposal to alleviate the plight and suffering of its homeless citizens. Selectively preventing the homeless and the poor from using their vehicles for activities many other citizens also conduct in their cars should not be one of those options.

**REVERSED.**