**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

DEC 5 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MATTHEW A. NEIDERMEYER, | No.  16-55233 |
| Plaintiff-Appellant, | D.C. No. 8:14-cv-01209-JLS-DFM |
| v. | |
| MICHAEL CALDWELL, CHP Officer #20073, individual and official capacity, | MEMORANDUM [*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted October 2, 2017
Pasadena, California

Before:  M. SMITH and NGUYEN, Circuit Judges, and SETTLE, District Judge.[**]

Matthew Neidermeyer appeals the district court's grant of summary

judgment in favor of California Highway Patrol Officer Michael Caldwell.  We

have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Benjamin H. Settle, District Judge for the U.S. District Court for the Western District of Washington, sitting by designation.

1. The district court properly granted Officer Caldwell summary judgment on Neidermeyer's investigatory stop claim. "In reviewing the district court's determination of reasonable suspicion, we must look at the 'totality of the circumstances' to see whether the officer had a 'particularized and objective basis' for suspecting criminal activity." *United States v. Colin,* 314 F.3d 439, 442 (9th Cir. 2002) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Video evidence shows Neidermeyer drifting to the left within the traffic lane and then quickly making an unsafe lane change. These apparent traffic offenses, *see* California Vehicle Code §§ 21658(a), 22107, created reasonable suspicion that justified an investigatory stop of the vehicle.

2. The district court properly granted Officer Caldwell summary judgment on Neidermeyer's unlawful arrest claim. Even assuming that Officer Caldwell lacked probable cause to arrest Neidermeyer for being under the influence of a controlled substance, Neidermeyer "bears the burden to show that the contours of the right were clearly established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011). Neidermeyer has failed, both here and before the district court, to identify controlling authority or a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful" in similar circumstances. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). In fact, Neidermeyer cites no cases at all, contending that the California

2

statute on driving while under the influence of a controlled substance (DUI) alone shows that he was arrested without probable cause. But the operative question is whether it was "clearly established" that an officer could not arrest someone for DUI under the undisputed facts in this case.

Here, construing the facts in the light most favorable to Neidermeyer, Officer Caldwell, who was trained as a Drug Recognition Expert, observed Neidermeyer's car drifting within its lane and then making an unsafe lane change. After the traffic stop, Officer Caldwell also observed Neidermeyer's delayed eye response during a nystagmus test.[1] Neidermeyer's behavior during the stop was unusual, including his atypical and continuous commentary and his flinging himself on the ground. Additionally, Neidermeyer spoke quickly and exhibited signs of paranoia, which Officer Caldwell had been trained to recognize as possible signs of stimulant use. Neidermeyer has not shown that, faced with these facts, a reasonable officer would have known that he lacked probable cause to arrest someone for suspicion of driving under the influence of a controlled substance. Since this is a "dispositive inquiry," *Saucier v. Katz*, 533 U.S. 194, 202 (2001), the

---

[1] Neidermeyer argues that Officer Caldwell lied about the nystagmus test results, but offers no evidence to support this allegation. We therefore doubt that Neidermeyer's allegation is enough to put the fact of the delayed eye response in dispute. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). But even if this fact *were* disputed, Neidermeyer's driving and subsequent behavior alone are sufficient to support our holding.

district court properly granted Officer Caldwell qualified immunity on this claim.

Neidermeyer argues that Officer Caldwell must have known he could not punitively arrest him for refusing to answer questions. Even assuming Neidermeyer's refusal to answer questions was a factor in his arrest, Officer Caldwell's "[s]ubjective intentions play no role" in the Fourth Amendment probable cause analysis. *Whren v. United States*, 517 U.S. 806, 813 (1996). Instead, we must look to what a reasonable officer would do in light of the objective facts. *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016). Here, the objective facts do not indicate that Officer Caldwell must have known that he lacked probable cause.

The dissent notes that the police "may not disregard facts tending to dissipate probable cause." **Dissent at 2,** *citing Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023-24 (9th Cir. 2009). But, viewing the evidence in the light most favorable to Neidermeyer, the officers encountered no such facts. On the contrary, Neidermeyer's bizarre behavior intensified throughout the encounter. After being asked to to step out of his car—a common measure during a lawful investigatory stop, *see Ramirez*, 560 F.3d at 1021—Neidermeyer demanded that he be allowed to stand "in public"; told the car's passenger that the officers "are not men that can be trusted at this point"; threw himself on the ground in response to a request to take a step; told the officers "take me in, arrest me"; and twice shouted "I'm afraid

4

for my life." He also told his companion to put her cell phone "in [her] underwear" to preserve her cell phone recording of the encounter, and later urged her to leave the car and "run to safety."

The dissent suggests that a jury could have found this to be fearful behavior that was reasonably provoked by Officer Caldwell's conduct. But, as the district court noted, the video at no point shows Officer Caldwell or his partner "raising his voice or acting in a manner that would prompt these statements and behavior from Neidermeyer." Neidermeyer may not have been obligated to answer Officer Caldwell's questions about his intended destination, but the questions themselves assuredly were permissible—indeed, "[a]sking questions is an essential part of police investigations." *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185 (2004). In light of the undisputed facts in this case, including Neidermeyer's increasingly unusual behavior during the lawful investigatory stop, we cannot say that a reasonable officer would have known he lacked probable cause to arrest Neidermeyer for a controlled substance DUI.

3. The district court properly granted summary judgment on the malicious prosecution claim. "[T]here is a rebuttable presumption that a prosecutor exercises independent judgment regarding the existence of probable cause in filing a complaint . . . insulat[ing] the arresting officers from liability." *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986); *see also Beck v. City of Upland*, 527 F.3d

5

853, 862 (9th Cir. 2008). The prosecutor, who had access to video of the arrest, testified in his deposition that he exercised independent judgment in deciding to file charges against Neidermeyer, and in fact also filed an additional charge not recommended in Officer Caldwell's report. Neidermeyer claims that the police reports contain false information. We have the benefit, as did the district court, of the videos documenting the traffic stop. While the police reports certainly characterize the evening's events differently than Neidermeyer does, like the district court, we cannot say that any portion of the reports is demonstrably false.[2] Neidermeyer "must provide more than an account of the incident in question that conflicts with the account of the officers involved" in order "[t]o rebut the presumption of independent judgment and to survive summary judgment." *Newman v. Cty. of Orange*, 457 F.3d 991, 995 (9th Cir. 2006).

4. The district court did not abuse its discretion in denying Neidermeyer leave to amend the complaint to include a claim for an allegedly unlawful frisk. While leave to amend should be "freely give[n] . . . when justice so requires," F.R.C.P. 15(a)(2), the district court was permitted to deny leave here due to Neidermeyer's "undue delay" in raising the claim and the "prejudice to the

---

[2] For example, Neidermeyer argues that he did not refuse to undergo field sobriety tests, as the report indicated. But while in the police vehicle, Neidermeyer explicitly refused to consent to any test other than a Breathalyzer, which was later administered at the police station.

6

opposing party" that late amendment would cause, *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Though the parties discussed the frisk in Officer Caldwell's deposition, an unlawful frisk claim was not raised in the second amended complaint that was filed *after* that deposition was taken. Thus, Officer Caldwell was not on notice that Neidermeyer would raise an unlawful frisk claim later in the litigation, and was deprived of the opportunity to conduct appropriate discovery as to possible damages.

Moreover, "when a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the 'good cause' standard of Federal Rule of Civil Procedure 16(b)(4), which provides that '[a] schedule may be modified only for good cause and with the judge's consent,' rather than the liberal standard of Federal Rule of Civil Procedure 15(a)." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (alteration in original). This good cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the moving party "was not diligent, the inquiry should end." *Id*. Neidermeyer, who "has been aware of the facts and theories supporting amendment since the inception of the action," did not seek leave to amend until opposing Officer Caldwell's Motion for Reconsideration. *In re W. States,* 715 F.3d at 737 (internal quotation mark

7

omitted).  Indeed, even if we considered the issue pursuant to Federal Rule of Civil Procedure 15(b), as the dissent contends we should, the result would be the same: Neidermeyer has already had two opportunities to amend his complaint and has offered no explanation for his undue delay in seeking a third, the lateness of which would prejudice Officer Caldwell.  The district court did not abuse its discretion in concluding that Neidermeyer did not show good cause for his failure to assert any claim related to the frisk in his operative complaint, especially in light of his personal knowledge of the relevant facts.

    **AFFIRMED.**

*Neidermeyer v. Caldwell*, No. 16-55233

SETTLE, District Judge, concurring in part and dissenting in part:

While I concur in the majority's analysis of Neidermeyer's investigatory stop claim and malicious prosecution claim, I respectfully dissent in regards to Neidermeyer's unlawful arrest and unlawful frisk claims.

1. I believe the district court improperly granted summary judgment to Officer Caldwell on Neidermeyer's unlawful arrest claim. Like the district court, the majority relies on the following facts that could support probable cause for Neidermeyer's arrest: (a) Neidermeyer momentarily drove along the left line of his lane before making an unsafe lane change in the opposite direction, (b) Officer Caldwell noted approximately two seconds of pupil constriction instead of one when performing a modified nystagmus test, and (c) Neidermeyer acted excessively fearful over the course of the investigatory stop.

In reaching its conclusion, the majority emphasizes Neidermeyer's failure to cite a consensus of cases to support his contention that, under the above-listed facts, a reasonable officer would have known that he lacked probable cause. However, while qualified immunity would certainly be warranted under these facts in isolation, probable cause exists only if a prudent person would have believed that the suspect had committed a crime under the totality of the circumstances. *Hart v. Parks*, 450 F.3d 1059, 1065–66 (9th Cir. 2006). "As a corollary of the rule

that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023–24 (9th Cir. 2009).

Interpreting the totality of the circumstances in the light most favorable to Neidermeyer, a jury could conclude that it was clear that Officer Caldwell lacked probable cause to arrest Neidermeyer. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Several facts in this case weigh against a finding of probable cause and negate the facts that Officer Caldwell cites to justify his decision to arrest.

First, apart from the modified nystagmus test—which revealed no nystagmus—Officer Caldwell failed to administer any field sobriety tests. The majority notes that Neidermeyer refused sobriety tests when he was in the back of Officer Caldwell's vehicle. However, the offer and refusal of sobriety tests occurred only after Neidermeyer had already been unlawfully frisked and then placed under arrest. An officer's failure to conduct any field sobriety tests weighs against finding that an officer has a reasonable belief or suspicion that a driver is intoxicated. *See United States v. Colin*, 314 F.3d 439, 446 (9th Cir. 2002). Additionally, Officer Caldwell's improper conduct during the stop and arrest (described below) places his credibility in question, and a jury could reasonably

disbelieve his testimony regarding pupil constriction entirely.

Second, Neidermeyer's fearful behavior can be justified as a reasonable response to Officer Caldwell's conduct during the investigatory stop. For instance, prior to Neidermeyer's fearful behavior, Officer Caldwell ordered Neidermeyer from the vehicle, unlawfully frisked him, and repeatedly stated that Neidermeyer was being detained—and would ultimately be arrested—simply for refusing to answer where he was going. While Officer Caldwell's subjective intent is irrelevant to the existence of probable cause, the fact that he outwardly and repeatedly expressed his unlawful subjective intent to Neidermeyer is an objective fact that should be considered when evaluating the reasonableness of Neidermeyer's fearful behavior. Moreover, "[a] frisk for weapons 'is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment.'" *Thomas v. Dillard*, 818 F.3d 864, 876 (9th Cir. 2016), *as amended* (May 5, 2016) (quoting *Terry v. Ohio*, 392 U.S. 1, 28 (1968)). This should be especially true of a patently unlawful frisk, which Officer Caldwell concedes occurred here.[1] Therefore, a jury could conclude that no reasonable officer would view Neidermeyer's fearful behavior as a basis for arrest, since Officer Caldwell's own conduct would likely evoke in a reasonable person some

---

[1] Officer Caldwell admits he lacked any suspicion that Neidermeyer was armed or dangerous. *See Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

3

sort of fearful response.

Third, while Neidermeyer's driving was sufficient to support probable cause for a traffic infraction or a reasonable suspicion of intoxicated driving, it was insufficient by itself to support probable cause for an arrest. The video evidence shows Neidermeyer's vehicle drifting towards the left edge of its lane and touching the line briefly before correcting itself and making a potentially unsafe lane change within a car's length of a passing vehicle. Only thirty-four seconds pass from the point when the video evidence first shows the vehicle drifting towards the left to the time that the officers signal to stop. Only fourteen of those seconds pass between when Neidermeyer's vehicle first observably drifted towards the left of his lane and when the subsequent lane change was completed. This was not the type of "swerving all over the road" of which Officer Caldwell accused Neidermeyer when initiating the stop. California courts have held that "pronounced weaving within a lane provides an officer with reasonable cause to stop a vehicle on suspicion of driving under the influence where such weaving continues for a substantial distance." *People v. Perez*, 221 Cal. Rptr. 776, 778 (1985). While Officer Caldwell's observation of a potentially unsafe lane change justified a citation and investigatory stop under California Vehicle Code §§ 21658(a), 22107, it did not, without more, confer probable cause to arrest for intoxicated driving. *See Colin*, 314 F.3d at 446 ("[An] entire observation last[ing] only 35–45 seconds . . .

4

is not long enough to show that [defendants] were weaving for a 'substantial' distance.").

For these reasons, I would remand on the basis that the district court mistakenly entered summary judgment on Neidermeyer's unlawful arrest claim when there were genuine factual disputes and a jury could conclude that, under the totality of the circumstances, it would be clear to a reasonable officer that Officer Caldwell lacked probable cause to arrest. *See Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988) ("Where the facts or circumstances surrounding an individual's arrest are disputed . . . the existence of probable cause becomes a question of fact for the jury.").

2.  Additionally, I believe that the district court improperly denied Neidermeyer leave to amend his complaint to include his claim asserting an unlawful frisk. The majority concludes that because Neidermeyer sought to amend his complaint after the deadline set forth in a Rule 16 scheduling order, he must satisfy the "good cause" standard set forth in Rule 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). In reaching the conclusion that the proposed amendment should be denied, the district court and the majority rely exclusively on Neidermeyer's lack of diligence in seeking the amendment.[2]

---

[2] While the majority cites "prejudice to the opposing party" as a factor justifying the denial of leave to amend, there does not appear to be any indication or findings of prejudice on the record.

5

However, Neidermeyer's motion for summary judgment, which raised the issue of the unlawful frisk, should have been construed as a motion to amend under Rule 15(b). *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). Under that standard, the district court was required to consider "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Id.* We abuse our discretion if we do not apply the correct legal standard, *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223 (9th Cir. 2000), or if we fail to consider the factors relevant to the exercise of our discretion. *See Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841–42 (9th Cir. 2000). *See also Desertrain*, 754 F.3d at 1155 ("[T]he district court abused its discretion by not amending the First Amended Complaint to conform to the evidence and argument . . . .").

Even if Neidermeyer's request to amend was governed by the Rule 16(b) "good cause" requirement instead of the Rule 15(b) standard, the district court and majority employ too stringent of a standard of "good cause" in this case. Denying leave to amend may be understandable under a harsh interpretation of Rule 16(b) and the Circuit's precedent in *Johnson*. *See* 975 F.2d at 609 ("If [the moving] party was not diligent, the inquiry should end."). However, while "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment," the very use of the term "primarily" in the Circuit's decision in

6

*Johnson* leaves open the possibility that circumstances will arise where courts must consider other factors. *Johnson*, 975 F.2d at 609. If this is not the case to require looking beyond just the diligence of the moving party, then I do not believe there can ever be one. The decision in *Johnson* was rendered under highly distinguishable circumstances. In that case, the moving party waited until summary judgment to seek an amendment despite receiving three separate invitations from opposing counsel to correct the inadequacy of the complaint. Additionally, the defendants in *Johnson* predicated their summary judgment motion on the inadequacy of the complaint, so the inadequacy of the complaint was actually before the court during summary judgment proceedings.

In this case, however, the issue of the unlawful frisk was fully briefed without objection in Officer Caldwell's opposition to Neidermeyer's summary judgment motion. Also, the parties openly and plainly discussed whether the frisk was lawfully justified during Officer Caldwell's deposition. Officer Caldwell failed to object to Neidermeyer's efforts to litigate the frisk's unlawfulness until after the district court had already entertained the fully-briefed arguments on the issue and entered summary judgment in favor of Neidermeyer. Denying leave to amend appears to benefit Officer Caldwell for lying in wait with his objection, despite having the issue made clear much earlier in the case. As noted in *Johnson*, a party's gross lack of diligence should end the inquiry into whether a late

7

amendment will be permitted. In this case however, the district court snatched defeat from the jaws of victory on a constitutional violation that was litigated without objection all the way through summary judgment.

Finally, the district court and the majority's approach of focusing exclusively on the diligence of Neidermeyer's counsel in seeking the proposed amendment appears unworkable when Rule 16 and Rule 15 are viewed in tandem. Rule 15(b) expressly states that, even during trial, "[t]he Court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Fed. R. Civ. P. 15(b)(1). Since Rule 15(b) allows for the amendment of pleadings freely during trial absent prejudice to the objecting party, basing the Rule 16(b) "good cause" standard exclusively on the diligence of the moving party, without any consideration of prejudice to the objecting party, renders the standard in Rule 15(b)(1) ineffective. Moreover, the text of Rule 16(b) requires that a party show good cause for modifying the scheduling order; it does not require the party to show good cause for their failure to seek modification earlier. If the Rule 16(b) "good cause" standard is to be properly applied in this case, it appears that it must necessarily incorporate a review of some factors beyond mere delay, including a balance of prejudice to Officer Caldwell and the ultimate goal of avoiding an unjust result.

8

Officer Caldwell's only arguments relating to prejudice deal with a purported lack of opportunity to obtain evidence on damages. If this did constitute prejudice, it could easily be remedied with less than an hour deposition of Neidermeyer sometime before trial, with the costs to be borne by Neidermeyer. Therefore, I would remand with instructions to consider whether the proposed amendment should be permitted under the factors applicable to the Rule 15(b) standard. Even under the Rule 16(b) "good cause" standard, I would remand for consideration of whether the proposed amendment would result in any prejudice to Officer Caldwell or whether avoiding an unjust result in this case constitutes "good cause" for modifying the scheduling order.