In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 16-1459 and 16-1694

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN JOHNSON and
TYLER LANG,

*Defendants-Appellants.*

———————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 1:14-cr-000390-1 and 1:14-cr-00390-2 — **Amy J. St. Eve**, *Judge.*

———————

ARGUED SEPTEMBER 21, 2016 — DECIDED NOVEMBER 8, 2017

———————

Before FLAUM, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Defendants Kevin Johnson and
Tyler Lang traveled from California to a mink farm in Illinois
where they released approximately 2000 minks from their
cages and destroyed or damaged other property on the farm.
While on their way to damage a fox farm, Johnson and Lang
were arrested on state charges of possession of burglary tools.
Johnson and Lang were ultimately charged in federal court

with violating the Animal Enterprise Terrorism Act (AETA), 18 U.S.C. § 43(a)(2)(A) and (a)(2)(C). They moved to dismiss the indictment, arguing that: (1) AETA is unconstitutionally overbroad because, by prohibiting damaging "real or personal property" of an animal enterprise, AETA criminalizes speech or expressive conduct that causes an animal enterprise to lose profits or goodwill; (2) AETA is void for vagueness because it is so broad that it invites discriminatory prosecutions; and (3) by labeling them "terrorists," AETA violated their right to substantive due process. The district court denied the motion to dismiss the indictment.

Defendants entered conditional guilty pleas, reserving the right to appeal the district court's denial of their motion to dismiss the indictment. We agree with the district court that AETA is not overbroad and does not violate the First Amendment because it does not prohibit lawful advocacy that causes only loss of profits or goodwill. Also, we conclude that AETA is not void for vagueness as its definite terms do not invite discriminatory prosecutions. Finally, we find that having the word "terrorism" in the title of the statute does not violate Defendants' substantive due process rights because Congress had a rational basis for using the word. For these reasons, we affirm the district court's denial of Defendants' motion to dismiss the indictment.

## I. BACKGROUND

In August 2013, Johnson and Lang traveled from Los Angeles, California to a mink farm in Morris, Illinois. The mink farm was in the business of breeding, raising, and selling minks to fur manufacturers. At the mink farm, Defendants released approximately 2000 minks from their

cages. They also removed portions of the fence surrounding the mink farm to help the minks escape and they destroyed the minks' breeding cards, which were needed to sell the minks to a furrier. In addition, they poured caustic substances on two farm vehicles and spray-painted the words "Liberation is Love" on a barn. Their vandalism caused between $120,000 and $200,000 worth of damage.

Next, Johnson and Lang began traveling to a fox farm in Roanoke, Illinois, which bred foxes to sell to fur manufacturers. They planned to damage the fox farm as well, but they were arrested by local law enforcement before they arrived at the fox farm. Johnson and Lang were charged in state court with possession of burglary tools and were convicted. Johnson was sentenced to 30 months' imprisonment and Lang was sentenced to 30 months' conditional discharge.

### A. District Court Proceedings

In July 2014, Johnson and Lang were charged with violating the Animal Enterprise Terrorism Act (AETA). Count I of the indictment alleged that they conspired to travel in interstate commerce for the purpose of damaging and interfering with the operations of an animal enterprise (the mink farm and fox farm), and in connection with that purpose, damaged the property of an animal enterprise (the mink farm), in violation of 18 U.S.C. § 43 (a)(2)(C). Count II of the indictment alleged that Defendants damaged real and personal property used by an animal enterprise (the mink farm) in violation of 18 U.S.C. § 43 (a)(2)(A).

Johnson and Lang moved to dismiss the indictment against them, asserting that AETA is facially overbroad

because it criminalizes protected speech that causes only economic damage in violation of the First Amendment and that it is unconstitutionally vague because it is so broad that it invites arbitrary and discriminatory enforcement. They further asserted that AETA violates substantive due process on its face and as applied to them because it labels persons who commit non-violent property damage as "terrorists."

The district court denied the motion to dismiss, finding that the statute was not overbroad because it did not criminalize speech that caused only economic damage such as lost profits. Instead, the court concluded that to violate the statute, a defendant has to first cause damage to tangible property used by the animal enterprise, and economic damages, such as lost profits, become relevant only when calculating the penalty to be imposed on a defendant. The district court also found the statute is not unconstitutionally vague because it clearly defines the conduct it criminalizes. Finally, the district court concluded that AETA does not infringe on Defendants' substantive due process rights because there was a rational basis for including the word "terrorism" in the title of AETA, given that the legislation is meant to criminalize violence and intimidation used against animal enterprises.

After the district court denied their motion to dismiss the indictment, Defendants entered conditional pleas of guilty to one count of conspiring to travel in interstate commerce for the purpose of damaging an animal enterprise, and in connection with that purpose, damaging the real and personal property of an animal enterprise, in violation of 18 U.S.C. § 43(a)(2)(C). Defendants reserved the right to challenge the district court's denial of their motion to dismiss

the indictment. Defendants now appeal the district court's denial of their motion to dismiss, raising the same three arguments they raised before the district court.

## II. ANALYSIS

We review the district court's legal conclusions regarding the constitutionality of AETA *de novo*. *United States v. Edwards*, 869 F.3d 490, 501 (7th Cir. 2017).

### A. AETA Is Not Substantially Overbroad

Johnson and Lang assert that AETA must be declared facially overbroad because it criminalizes advocacy that causes an animal enterprise to spend money or lose profits and therefore chills speech and expressive conduct protected by the First Amendment. In support of this argument, Defendants point to subsection (a)(2)(A) which prohibits intentionally damaging "any real or personal property (including animals and records) used by an animal enterprise … ." Defendants contend that "any real or personal property" includes intangible property, and so any animal activist who travels in interstate commerce or uses a facility of interstate commerce for the purpose of adversely impacting the profits or goodwill of an animal enterprise will be violating AETA.

A defendant who challenges a statute as facially overbroad "assumes a heavy burden … for it is now well-established that such a challenge can succeed only when the statute is substantially overbroad, *i.e.*, when the statute is unconstitutional in a substantial portion of the cases to which it applies." *United States v. Rodgers*, 755 F.2d 533, 542 (7th Cir. 1985) (internal quotation marks and citation omitted). The Supreme Court, in *United States v. Williams*, 553 U.S. 285, 292

(2008), explained why only those statutes that prohibit a "substantial amount" of protected expression will be declared facially invalid pursuant to the overbreadth doctrine:

> The doctrine seeks to strike a balance between competing social costs. On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.

(emphasis in original) (citation omitted).

Because of the need to maintain the balance between these competing interests, courts have described the overbreadth doctrine as "strong medicine … [to be] employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

### 1.  Dictionary Definition Not Dispositive

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute

covers." *Williams*, 553 U.S. at 293. As noted above, Defendants maintain that in prohibiting damaging "any real or personal property (including animals or records) used by an animal enterprise," AETA prohibits advocacy that causes damage to only intangible property such as profits or goodwill. In support of this argument, Defendants cite one of Black's Law Dictionary's definitions of "personal property" which is "[a]ny moveable or intangible thing that is subject to ownership and not classified as real property." BLACK'S LAW DICTIONARY 1412 (10th ed. 2014). According to Defendants, this makes it clear that AETA criminalizes causing an animal enterprise to lose only profits or goodwill.

However, "[d]ictionary definitions are acontextual, and thus must be used as sources of statutory meaning only with great caution." *Commodity Futures Trading Comm'n v. Worth Bullion Group, Inc.*, 717 F.3d 545, 550 (7th Cir. 2013) (court rejected dictionary definitions of statutory term because context of statute indicated a different definition) (internal quotation marks and citation omitted). When one looks at the phrase "any real or personal property" in AETA not in isolation, but instead in the context of the whole statute, it becomes clear that the definition advocated by Defendants is not the definition intended by Congress. "Statutory interpretation is guided not just by a single sentence or sentence fragment, but by the language of the whole law, and its object and policy." *Id.* (internal quotation marks and citation omitted); s*ee also*, *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (must view words in a statute "in their context and with a view to their place in the overall statutory scheme").

In AETA, the phrase "any real or personal property" is immediately followed by the phrase "(including animals or

records) used by an animal enterprise … ." Animals and records are both tangible items and the phrase "used by an animal enterprise" also indicates tangible items, because an animal enterprise does not "use" intangible items such as lost profit. So, the phrase "any real or personal property," when read in the context of AETA, is "narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated." *Commodity Futures Trading Comm'n*, 717 F.3d at 550 (internal quotation marks and citation omitted).

### 2. "Economic Damage" Not Included in Offense Provision and Definition Excludes Lawful Economic Disruption

Defendants' contention that one can violate AETA solely by causing intangible economic damage to an animal enterprise is further undermined when one examines the structure of the statute. The "Offense" portion of the statute, subsection (a), does not make any reference to "economic damage." It simply prohibits damaging "real or personal property … used by an animal enterprise." However, the "Penalties" provision, contained in subsection (b) of AETA, does contain the phrase "economic damage." The "Penalties" section provides for varying fines and/or terms of imprisonment depending upon the amount of "economic damage" caused by a defendant. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (internal quotation marks and citations omitted). We

agree with the district court's conclusion that "the specific inclusion of the defined term 'economic damage' in the penalties provision of the statute, but not in the offense conduct, indicates that Congress did not intend to criminalize conduct that solely causes economic loss as damage to property." *United States v. Johnson*, 2015 WL 1058087, at * 4 (N.D. Ill. Mar. 5, 2015).

Instead, the inclusion of the term "economic damage" in the "Penalties" provision but not in the "Offense" provision indicates that to violate AETA, a defendant must first damage tangible property of the animal enterprise, such as animals or records. The amount of "economic damage" caused by the defendant, such as the amount of lost profits of the animal enterprise, becomes relevant only when determining the penalty that should be imposed upon the defendant. Causing only intangible economic damage, without causing any damage to tangible property of the animal enterprise, would not be sufficient to violate AETA.

This conclusion is further buttressed by the definition of "economic damage" contained in subsection (d) of AETA. "Economic damage" is defined as

> (A) the replacement costs of lost or damaged property or records, … the loss of profits, or increased costs, …; but

> (B) does not include any lawful economic disruption (including a lawful boycott) that results from lawful public, governmental, or business reaction to the disclosure of information about an animal enterprise[.]

18 U.S.C. § 43(d)(3)(A) and (B). So, although increased "economic damage" normally results in an increased penalty under AETA, subsection (B) of the definition of "economic damage" makes clear that a defendant's penalty cannot be increased because of any economic damage, such as a lawful boycott, caused by the disclosure of information about an animal enterprise. If a defendant's penalty cannot be increased because of a lawful boycott caused by a defendant's advocacy, it follows that the offense provision of AETA cannot be violated by a boycott or other intangible economic damage caused by a defendant's advocacy.

### 3. First Amendment Activity That Causes Purely Intangible Economic Damage Does Not Violate AETA

If any doubt still lingers about whether one could violate AETA solely by causing intangible economic damage, such as lost profits, to an animal enterprise through lawful advocacy, the rules of construction in subsection (e) of AETA should resolve any such doubt. Subsection (e)(1) provides:

> Nothing in this section shall be construed—
>
> > (1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution.

18 U.S.C. § 43 (e)(1). This rule of construction confirms that Congress did not intend to criminalize causing purely intangible economic damage to an animal enterprise through lawful protest activities.

While it is true that Congress cannot save an overbroad statute by adding a rule of construction that contradicts the statute's substantive provisions, in this case the rule of construction does not contradict the plain meaning of the statute. Instead, the context of the statute dictates that "personal property" excludes solely intangible items and therefore speech or expressive conduct, such as protests or documentaries, which cause damage only to an animal enterprise's profits is not criminalized by AETA. The rule of construction in subsection (e)(1) of AETA simply reinforces the plain language of the statute. *Blum v. Holder*, 744 F.3d 790, 801 (1st Cir. 2014) ("We are satisfied that AETA includes safeguards in the form of its expression-protecting rules of construction, which preclude an interpretation according to which protected speech activity resulting in lost profits gives rise to liability under subsection (a)(2)(A)."); c*f. CISPES v. F.B.I.*, 770 F.2d 468, 474 (5th Cir. 1985) (rule of construction deemed a "valuable indication of Congress' concern for the preservation of First Amendment rights").

The legislative history of AETA also reinforces the conclusion that AETA is not intended to criminalize speech or expressive conduct that causes damage only to an animal enterprise's profits or goodwill. Several legislators made statements indicating that while AETA was being passed to combat the violence being perpetrated against animal enterprises as well as the people and entities connected to animal enterprises, Congress was aware of the importance of protecting the First Amendment right to engage in lawful protest against animal enterprises. Senator Feinstein expressed these sentiments succinctly, stating,

> I fully recognize that peaceful picketing and public demonstrations against animal testing should be recognized as part of our valuable and sacred right to free expression. For this reason, all conduct protected by the First Amendment is expressly excluded from the scope of this legislation. This law effectively protects the actions of the law-abiding protestor while carefully distinguishing the criminal activity of extremists.

152 Cong. Rec. S9254-01, 2006 WL 2582709; *see also* 152 Cong. Rec. H8590-01, 2006 WL 3289966 (statement of Rep. Scott) ("to reassure anyone concerned with the intent of this legislation, we have added in the bill assurances that it is not intended as a restraint on freedoms of expression such as lawful boycotting, picketing or otherwise engaging in lawful advocacy for animals"). In summary, the text of the statute as well as the legislative history make clear that AETA does not criminalize speech or expressive conduct that causes damage only to intangible profits or goodwill of an animal enterprise.

### 4. Conspiracy Provision Does Not Make AETA Overbroad

Defendants' final argument in support of their claim that AETA is overbroad rests on a reading of the conspiracy provision that is illogical, inconsistent with the other provisions of the statute, and renders the conspiracy provision itself redundant.[1] The "Offense" provision of AETA states,

---

[1] The government contends that because Defendants did not raise their argument about the conspiracy provision of the statute before the

> (a) Whoever travels in interstate or foreign commerce …—
>
> (1) for the purpose of damaging or interfering with the operations of an animal enterprise; and
>
> (2) in connection with such purpose—
>
>> (A) intentionally damages or causes the loss of any real or personal property (including animals or records) used by an animal enterprise …;
>>
>> (B) intentionally places a person in reasonable fear of the death of or serious bodily injury to that person …; or
>>
>> (C) conspires or attempts to do so;
>
> shall be punished as provided for in subsection (b).

18 U.S.C. § 43(a). Defendants maintain that the phrase "conspires or attempts to do so" in subsection (a)(2)(C) refers to subsection (a)(1), traveling in interstate commerce for the purpose of damaging or interfering with the operations of an animal enterprise. So, according to Defendants, under the conspiracy provision, one can violate AETA by conspiring to "damage" or "interfere" with an animal enterprise, without conspiring or attempting to damage tangible property and without conspiring or attempting to cause fear of bodily injury or death. Again Defendants claim that this means one can violate AETA through speech or expressive conduct that

---

district court, the argument is forfeited and subject to plain error review. Defendants dispute they are limited to plain error review because they contend a defendant cannot forfeit a facial challenge to a statute's constitutionality. We do not have to resolve this dispute because, even under *de novo* review, Defendants' argument would fail.

causes only intangible economic damage to an animal enterprise.

We disagree with Defendants' interpretation of the conspiracy provision. We believe that the phrase "conspires or attempts to do so" in subsection (a)(2)(C) refers back to subsections (a)(2)(A) and (a)(2)(B) (damaging real or personal property used by an animal enterprise and placing a person in fear of death or bodily injury). So, to violate the conspiracy provision, one must conspire to travel in interstate commerce for the purpose of damaging or interfering with an animal enterprise and, *in connection with such purpose*, conspire or attempt to damage tangible property or conspire or attempt to cause fear of death or bodily injury. It is the more logical reading of the statute to presume that subsection (a)(2)(C) refers to the provisions that immediately precede it, rather than skipping over those sections and assuming that subsection (a)(2)(C) refers back to subsection (a)(1).

Also, our interpretation of the conspiracy provision is consistent with how the provision was applied to Defendants in this case. Defendants were indicted under 18 U.S.C. § 43 (a)(2)(C) and the indictment alleged that Defendants conspired to travel in interstate commerce for the purpose of damaging an animal enterprise and, in connection with that purpose, intentionally damaged the real and personal property of an animal enterprise. Furthermore, Defendants' reading of the statute, to the extent it would result in speech or expressive conduct that causes only economic damage being criminalized, is contrary to the plain language of the statute and the legislative history discussed above.

Finally, we reject Defendants' reading of the conspiracy provision because their "interpretation would … render

subsection (a)(2)(C) redundant since every time subsection (a)(1) is satisfied so too would be the attempt branch of subsection (a)(2)(C). Avoidance of redundancy is a basic principle of statutory interpretation." *Blum*, 744 F.3d at 803; *United States v. Buddenberg*, 2009 WL 3485937, at *12 (N.D. Cal. Oct. 28, 2009). So, for all of these reasons, we find AETA does not prohibit a substantial amount of protected speech and is not overbroad in violation of the First Amendment.

## B. AETA Is Not Void for Vagueness

"A vagueness claim alleges that, as written, the law either fails to provide definite notice to individuals regarding what behavior is criminalized or invites arbitrary and discriminatory enforcement—or both." *Bell v. Keating*, 697 F.3d 445, 455 (7th Cir. 2012). Defendants contend that AETA suffers from the second infirmity—that it "invites arbitrary and discriminatory enforcement." Specifically, they note that the term "animal enterprise" is defined by AETA as "a commercial or academic enterprise that uses or sells animals or animal products for profit, food or fiber production, agriculture, education, research, or testing …" 18 U.S.C. § 43(d)(1)(A). Defendants claim that given the breadth of this definition, the statute covers any property crime against any grocery store, restaurant, or clothing store that sells animal products such as leather, yet only animal rights activists have been prosecuted under AETA. Because of the potential for discriminatory enforcement, Defendants claim AETA must be declared void for vagueness.

As a preliminary matter, the government contends that because Defendants' vagueness challenge does not implicate First Amendment concerns, Defendants cannot facially challenge AETA as unconstitutionally vague and instead can

only argue that the statute is vague as applied to their specific conduct. *See, e.g., United States v. Morris*, 821 F.3d 877, 879 (7th Cir. 2016) ("[v]agueness challenges to statutes that do not involve First Amendment interests are examined in light of the facts of the case at hand") (citing *Maynard v. Cartwright*, 486 US. 356, 361 (1988)). We recently held that a defendant who claimed that a statute was so vague that it invited arbitrary enforcement could not bring a facial challenge and had to prove that "*his* prosecution arose from arbitrary enforcement" because his vagueness claim did not involve First Amendment interests and his conduct was clearly proscribed by the law at issue. *United States v. Coscia*, 866 F.3d 782, 794 (7th Cir. 2017) (emphasis in original).

In the instant case, Defendants' conduct is clearly proscribed by AETA and their vagueness claim does not involve First Amendment interests, so we agree that Defendants must prove *their* prosecutions arose from arbitrary enforcement to prove the statute is void for vagueness. "[T]his inquiry involve[s] determining whether the conduct at issue falls so squarely in the core of what is prohibited by the law that there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances." *Id.* (internal quotation marks and citation omitted). It is beyond question that Defendants' conduct of releasing 2000 minks, destroying their breeding cards, spraying a caustic substance on farm equipment and spray painting "Liberation is Love" on the barn of the mink farm "falls squarely in the core of what is prohibited by" AETA. *Id.* Further, "no reasonable enforcing officer could doubt … [AETA's] application in the circumstances." *Id.* So, we reject the claim that AETA should be declared void for vagueness.

Furthermore, even if Defendants could have brought a facial vagueness challenge to the statute, we would have rejected such a claim. We do not believe AETA "impermissibly delegates to law enforcement the authority to arrest and prosecute on an ad hoc and subjective basis." *Bell*, 697 F.3d at 462 (7th Cir. 2012) (internal quotation marks and citations omitted). To violate AETA, a person must travel in interstate commerce or use a facility of interstate commerce "for the purpose of damaging or interfering with the operations of an animal enterprise …" and, in connection with that purpose, must intentionally damage tangible property, or intentionally threaten to injure or injure a person, or conspire to damage tangible property or cause bodily injury. The elements of the law are discernable and specific. AETA is not a law where "[d]efiniteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of the police and prosecution, although not chargeable with any particular offense." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 166 (1972).

AETA is nothing like the laws declared void for vagueness in the cases cited by Defendants. For example, in *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1149 (9th Cir. 2014), the Ninth Circuit declared a Los Angeles municipal code section that prohibited using a vehicle "as living quarters either overnight, day-by-day, or otherwise" as unconstitutionally vague. *Id.* (quoting Los Angeles Municipal Code Section 85.02). The court found, "Section 85.02 is broad enough to cover any driver in Los Angeles who eats food or transports personal belonging in his or her vehicle. Yet it appears to be applied only to the homeless." *Id.* at 1156. Because the law covered such a large amount of innocent conduct and gave

the police unfettered discretion to cite the homeless for the same conduct engaged in by persons who were not homeless, the law was deemed unconstitutionally vague. *See also Metro Produce Distributors, Inc. v. City of Minneapolis*, 473 F. Supp. 2d 955, 961 (D. Minn. 2007) (law prohibiting "idling" in certain vehicles, without stating how long one had to be "idling" before violating the law, found unconstitutionally vague because it gave police "unfettered discretion to apply the ordinance in an arbitrary manner").

AETA is not so lacking in standards that it gives a vast amount of discretion to the police to enforce it in an arbitrary or discriminatory manner. While it may be true that the people most often prosecuted under AETA are animal rights activists, this does not mean the law is vague and is being enforced in a discriminatory manner. Instead, it may simply mean that animal rights activists are the persons who are most often violating the law. *United States v. Soderna*, 82 F.3d 1370, 1376 (7th Cir. 1996) ("[a] group cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group") (citation omitted).

Defendants complain that the government did not bring an AETA prosecution against four teenagers (an 18 year-old, two 17-year-olds and a 15-year old) who broke into a shed and killed over 900 chickens with a golf club and other weapons. However, a newspaper article regarding the incident indicated that none of the four had traveled in interstate commerce and that they killed the chickens for no reason, so it appears AETA could not have been applied to them. Pablo Lopez, *Fresno Man Who Clubbed 925 Foster Farms Chickens Sentenced to Jail*, Fresno Bee, Apr. 15, 2015,

http://www.fresnobee.com/news/local/crime/article19656453
.html. Because AETA does not give unfettered discretion to
the government to enforce it in a discriminatory manner, we
find AETA is not void for vagueness.

### C. AETA Does Not Violate Substantive Due Process

Defendants argue that AETA is unconstitutional on its
face and as applied to them because it labels them, and others
who have committed non-violent property crimes for the
purpose of damaging an animal enterprise, as "terrorists."
Defendants contend that they have a substantive due process
right to not have their non-violent property crimes
prosecuted under a statute whose non-codified title has the
word "terrorism" in it.[2] They reason that being convicted for
destruction of property under a statute with the word
"terrorism" in it is akin to requiring a person who is convicted
of kidnapping a child to register as a sex offender, even if the
person did not commit sexual assault. *See People v. Knox*, 903
N.E.2d 1149, 1152 (N.Y. 2009) (persons who did not commit
sexual assault but were required to register as sex offenders
because they were convicted of kidnapping children had a
non-fundamental liberty interest in not being required to
register under an incorrect label).

However, there are important differences between
Defendants being convicted under AETA and the persons
required to register as sex offenders in *Knox*. Defendants are
not required to register as "terrorists," and they are not
subject to any sentence enhancement based on having

---

[2] Although the statute at issue is referred to as the "Animal Enterprise
Terrorism Act," its official title under the U.S. Code is "Force, violence,
and threats involving animal enterprises." 18 U.S.C. § 43.

committed a terrorist act. Defendants note that persons convicted under AETA have their cases reviewed by a government counter-terrorism employee to help determine in what type of penal facility they will be placed. Yet, as the government points out, every aspect of the prisoner's background, including the facts of his or her crime, are examined to determine in what type of facility a prisoner should be placed. So, conviction under AETA does not automatically lead to a defendant being placed in a highly restrictive or segregated prison unit. Furthermore, Defendants have not cited any instances where a person convicted under AETA for a non-violent property crime was placed in such a facility.

Given that the only impact of having the word "terrorism" in the non-codified title of AETA is that a person convicted under the statute will have a government counter-terrorism employee review his or her case, and possibly give input about the type of penal institution in which he or she should be placed, it is questionable whether Defendants have articulated a liberty interest protected by the substantive due process clause. "[T]he Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (internal citation omitted). And Defendants are asking us to break new ground because, as noted above, being convicted under AETA for a non-violent property crime is not at all comparable to being forced to register as a sex offender when

one has not committed an offense involving sexual misconduct.

However, even if we assume, without deciding, that Defendants have a liberty interest in not being convicted for a property crime under a statute that has the word "terrorism" in the non-codified title, their substantive due process claim would still fail. Defendants concede that the liberty interest at stake is not a fundamental liberty interest such as "the freedoms expressly protected by the Bill of Rights …" *Hayden ex rel. A.H. v. Greensburg Comty. Sch. Corp.*, 743 F.3d 569, 575 (7th Cir. 2014). "Officials bear a heavy burden of justification for curtailing a right that qualifies as fundamental." *Id.* Instead, if any liberty interest is at stake here, it is a non-fundamental right, which is subject only to rational basis review. As we explained in *Hayden ex rel. A.H.*,

> [w]here a non-fundamental liberty—sometimes described as a harmless liberty—is at stake, the government need only demonstrate that the intrusion upon that liberty is rationally related to a legitimate government interest … The [defendants'] burden … is a heavy one: So long as there is any conceivable state of facts that supports the [use of the word "terrorism" in AETA's non-codified title], it passes muster under the due process clause; put another way, only if the [use of the word "terrorism" in AETA's non-codified title] is patently arbitrary would it fail.

*Id.* at 576 (internal quotation marks and citation omitted); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013) ("[t]hose attacking a statute on rational basis grounds

have the burden to negate every conceivable basis which might support it"); *Swank v. Smart*, 898 F.2d 1247, 1252 (7th Cir. 1990) (restriction on non-fundamental liberty "violates the due process clause only if utterly unreasonable").

Congress's use of the word "terrorism" in the non-codified title of AETA was not "patently arbitrary" or "utterly unreasonable." Congress explained that AETA was being enacted because of "an increase in the number and the severity of criminal acts and intimidation against those engaged in animal enterprises. … Some of the more violent acts by these groups include arson, pouring acid on cars, mailing razor blades, and defacing victims' homes." 152 Cong. Rec. H8590-01, 2006 WL 3289966 (statement of Rep. Sensenbrenner). Rep. Petri noted that "[a]nimal rights extremists advance their cause through direct action, which includes death threats, vandalism, animal releases and bombings." *Id.* Given the serious harms the statute was trying to address, including arson, bombing, and death threats, it was in no way arbitrary or unreasonable for Congress to include the word "terrorism" in the non-codified title of AETA.

Defendants argue that it is not "rational" that they were convicted under a statute with the word "terrorism" in the non-codified title because their actions were not violent and most definitions of the word "terrorism" contain some mention of violence. However, not all property crimes are non-violent. As noted above, Congress was concerned about actions by extremists such as arson and bombings. Both of those crimes involve destruction of property and are extremely violent. Furthermore, it is not "utterly unreasonable" for Congress to use a word in the non-codified

title of a statute that may not describe every act criminalized by the statute. The word "terrorism" certainly bears a rational relationship to many of the acts covered by AETA and for that reason, Defendants' claim that the use of the word "terrorism" in AETA violates their right to substantive due process must fail.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.