In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1343

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BLAIR COOK,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:17-cr-00048-001 — **James D. Peterson**, *Chief Judge.*

---

ARGUED SEPTEMBER 13, 2018 — DECIDED JANUARY 28, 2019

---

Before FLAUM, MANION, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* A jury convicted Blair Cook of being an unlawful user of a controlled substance (marijuana) in possession of a firearm. *See* 18 U.S.C. § 922(g)(3). Cook appeals his conviction, contending that the statute underlying his conviction is facially vague, that it improperly limits his Second Amendment right to possess a firearm, and that the

district court did not properly instruct the jury as to who constitutes an unlawful user of a controlled substance. We affirm Cook's conviction.

**I.**

On May 25, 2017, officers of the Madison, Wisconsin police department conducted a traffic stop of the car that Cook was driving. When officers approached the car and spoke with Cook, they noticed a strong odor of marijuana emanating from the car. Apart from the possibility that Cook was driving under the influence of marijuana, Cook was also driving on a suspended license and without a license plate on the front of his vehicle, so the officers decided to detain him and ordered him to step out of the vehicle. Officer Matthew Wentzel removed a loaded, .40-caliber Glock Model 23 pistol from a holster under Cook's shoulder. The gun had an extended 22-round capacity magazine with 19 bullets remaining. Cook was transported to the police station for further questioning. During a recorded interview at the station, Cook acknowledged to Wentzel that he had used marijuana almost daily for nearly ten years (since the age of 14), that he did so because marijuana calmed him down, and that he had smoked two "blunts" earlier that day.[1] On prodding from the police, Cook ultimately produced a small packet from his groin area containing a half ounce of marijuana.

Cook had purchased the firearm from Max Creek Outdoors in Oregon, Wisconsin on April 2, 2017. At the time of the

---

[1] "Blunt" is a street term for a cigar from which the tobacco has been removed and replaced with marijuana.

purchase, he was required to complete a Firearms Transaction Record Form 4473 promulgated by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). On that form, Cook answered "No" to the question, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" Directly under that question the reader of the form was admonished, "Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medical or recreational purposes in the state where you reside."

A grand jury subsequently charged Cook with two offenses: possession of a firearm and ammunition by an "unlawful user" of marijuana, in violation of section 922(g)(3), and making a false statement (that he was not an unlawful user of marijuana) on the ATF form in connection with his purchase of a firearm and ammunition, in violation of 18 U.S.C. § 924(a)(1)(A).

Cook moved to dismiss both counts of the indictment on the ground that the term "unlawful user" of a controlled substance found in sections 922(g)(3) and 924(a)(1)(A) is unconstitutionally vague. The district court denied the motion. R. 21 at 2–3.

The district court subsequently gave the following instruction to the jury as to who constitutes an "unlawful user" of marijuana:

> The defendant was an **unlawful user of marijuana** if he used marijuana on a regular and ongoing basis for a period of time that began

> before and continued through the date of the charged offense. The government is not required to prove that the defendant was under the influence of marijuana when he filled out the Firearms Transaction Record or when he possessed the firearm. The government is not required to prove that the defendant used marijuana on any particular day, or within a certain number of days of when he committed the charged offenses.

R. 44 at 8; R. 56 at 70–71 (emphasis in original). The defense rejected the government's offer to include an additional sentence in this instruction advising the jury that a one-time use of marijuana is insufficient to render the defendant an "unlawful user" within the meaning of either statute. R. 87 at 17.

Following a one-day trial, a jury convicted Cook on the section 922(g)(3) charge but was unable to reach a verdict on the section 924 charge, which the district court dismissed without prejudice, R. 53. The district court denied Cook's Rule 33 motions for a new trial (R. 73) and ordered Cook to serve a four-year term of probation in lieu of any term of imprisonment (R. 76).

## II.

Section 922(g)(3) provides in relevant part that "[i]t shall be unlawful for any person … who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)) … to … possess in or affecting commerce, any firearm or ammunition

… ." Marijuana is a Schedule I controlled substance, *see* 21 U.S.C. § 812(c)(10), and because the Glock pistol Cook purchased had previously traveled in interstate commerce (it was manufactured in Smyrna, Georgia), section 922(g)(3) forbade Cook's possession of the gun at the time of the May 2017 traffic stop provided he qualified as an "unlawful user" of marijuana, which the jury necessarily found that he did.

Cook challenges his conviction pursuant to this statute on three grounds: (1) the statute is facially vague as to who constitutes an "unlawful user" of a controlled substance; (2) the statute violates his Second Amendment right to possess a firearm; and (3) the jury instruction defining "unlawful user" was inadequate. For the reasons that follow, we find none of these arguments to be persuasive.

A.  Facial vagueness challenge to section 922(g)(3).

Cook contends that section 922(g)(3) is vague on its face, such that his conviction violates the Fifth Amendment's due process clause. The void-for-vagueness doctrine requires that a criminal statute define an offense with sufficient clarity that an ordinary person has fair notice of what conduct is prohibited and so as to avoid arbitrary and discriminatory enforcement. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 402–03, 130 S. Ct. 2896, 2927–28 (2010); *United States v. Sylla*, 790 F.3d 772, 774–75 (7th Cir. 2015). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306, 128 S. Ct. 1830, 1846 (2008).

The general practice, outside of the First Amendment context,[2] has been to consider the purported vagueness of a statute in light of the facts of the particular case—*i.e.*, as applied—rather than in the abstract. *See*, *e.g.*, *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 1857–58 (1988); *United States v. Johnson*, 875 F.3d 360, 370 (7th Cir. 2017). This means, of course, that a litigant challenging the statute ordinarily must show that it is vague as applied to him; and if the statute undoubtedly applies to his conduct, he will not be heard to argue that the statute is vague as to one or more hypothetical scenarios. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19, 130 S. Ct. 2705, 2718–19 (2010) (quoting *Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 1191 (1982)); *Broadrick v. Oklahoma*, *supra* n.2., 413 U.S. at 610, 93 S. Ct. at 2915 (collecting cases).

Nonetheless, the Supreme Court has on a number of occasions entertained facial challenges to criminal statutes that do not implicate First Amendment concerns. *See*, *e.g.*, *Skilling*, 561 U.S. at 402–14, 130 S. Ct. at 2927–33 (honest services fraud); *City of Chicago v. Morales*, 527 U.S. 41, 52–64, 119 S. Ct. 1849, 1857–63 (1999) (loitering by gang members in public spaces); *Lanzetta v. New Jersey*, 306 U.S. 451, 453–58, 59 S. Ct. 618, 619–21 (1939) (gang participation); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89–93, 41 S. Ct. 298, 300–01 (1921) (price gouging). As we noted in *United States v. Jones*, 689 F.3d 696 (7th Cir.

---

[2]  When a statute implicates activities protected by the First Amendment, there is a special concern that free speech and expression not be chilled. *See Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 93 S. Ct. 2908, 2915–16 (1973).

2012), *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015), the common thread uniting these cases with facial challenges in the First Amendment context appears to be a concern (or at least a colorable contention) that the challenged statute "simply has no core" and lacks "any ascertainable standard for inclusion and exclusion, "*id.* at 703 (quoting *Smith v. Goguen*, 415 U.S. 566, 578, 94 S. Ct. 1242, 1249 (1974)). Such a standardless statute poses a trap for the person acting in good faith, who is given no guidepost by which he can divine what sort of conduct is prohibited. *See Colautti v. Franklin*, 439 U.S. 379, 395, 99 S. Ct. 675, 685 (1979), *overruled in part on other grounds*, *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 109 S. Ct. 3040 (1989). The concern is heightened when the statute contains no *mens rea* requirement, *Colautti*, 439 U.S. at 395, 99 S. Ct. at 685–86, and the uncertainty as to exactly what is proscribed "threatens to inhibit the exercise of constitutionally protected rights," *id.* at 391, 99 S. Ct. at 683. *See also Morales*, 527 U.S. at 55, 119 S. Ct. at 1858.

The statutory prohibition at issue here does not present such concerns. True enough, section 922(g)(3) does implicate Cook's Second Amendment right to possess a gun. But the prohibition is not a strict liability offense requiring no *mens rea*, as in *Colautti*. By virtue of the separate penalties provision found in 18 U.S.C. § 924(a)(2), a violation of section 922(g)(3) must be knowing – that is, the defendant must have knowledge of the facts that constitute the offense. *See Holder*, 561 U.S. at 21, 130 S. Ct. at 2720 ("the knowledge requirement of the statute further reduces any potential for vagueness, as we have held with respect to other statutes containing a similar requirement") (collecting cases); *United States v. Johnson*, 911 F.3d 849,

853 (7th Cir. 2018) (word "knowingly" cures any potential vagueness in challenged condition of supervised release) (citing *Screws v. United States*, 325 U.S. 91, 102, 65 S. Ct. 1031, 1036 (1945)). More importantly, there is, as our decision in *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010) (per curiam) makes clear, a readily appreciable core of conduct prohibited by the statute.

*Yancey* construes the term "unlawful user," as used in section 922(g)(3), to mean one who regularly or habitually ingests controlled substances in a manner other than as prescribed by a physician. *Id.* at 682. Our opinion adds that such use must be contemporaneous with the defendant's possession of a gun. *Id.* at 687 (collecting cases); *see also United States v. Grap*, 403 F.3d 439, 446 (7th Cir. 2005) (adopting same contemporaneity requirement for purposes of U.S.S.G. § 2K2.1(a)(6), which specifies the base offense level for "prohibited person" convicted of firearms offense) (collecting cases). We rendered this interpretation of section 922(g)(3) in the course of rejecting a Second Amendment challenge to the statute. Noting the well-established link between chronic drug use and violence, we concluded that section 922(g)(3)'s ban on gun possession by those who regularly engage in illegal drug use was substantially related to the important government interest in preventing violent crime. 621 F.3d at 686–87. We must take into account *Yancey*'s gloss on the statute in evaluating Cook's vagueness claim. *See Skilling*, 561 U.S. at 405, 130 S. Ct. at 2929 ("It has long been our practice, … before striking a federal statute as vague, to consider whether the prescription is amenable to a limiting construction."); *Pleasureland Museum,*

*Inc. v. Beutter*, 288 F.3d 988, 995–96 (7th Cir. 2002); *Waldron v. McAtee*, 723 F.2d 1348, 1354 (7th Cir. 1983).

Cook is thus not in a position to claim that the statute is so indefinite as to inhibit the legitimate exercise of Second Amendment rights. Whatever doubt there might be at the margins as to conduct potentially reached by section 922(g)(3), there can be no doubt as to the core of conduct that the statute (as construed by *Yancey*) proscribes: the possession of a firearm by an individual engaged in the regular, non-prescribed use of a controlled substance. Indeed, it would appear that Cook's conduct—possession of a firearm in the midst of a nearly ten-year period of daily marijuana use—epitomizes that core, which may explain why Cook is so keen to challenge the statute on its face rather than as applied.

Cook nonetheless suggests that the Supreme Court's recent decision in *Johnson* authorizes his facial vagueness challenge, regardless of whether the statute is vague as applied to his particular conduct. *Johnson* declared the (now defunct) residual clause of the Armed Career Criminal Act ("ACCA") to be impermissibly vague without requiring the defendant to first show that the clause was vague as applied to him. 135 S. Ct. at 2563. The ACCA specifies an enhanced sentence of 15 years to life for one convicted of a firearms offense if the defendant has three or more prior convictions for either a "serious drug offense" or a "violent felony." 18 U.S.C. § 924(e)(1). As relevant here, the statute defines "violent felony" to mean a crime punishable by a year or more in prison which "is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]" § 924(e)(2)(B)(ii) (emphasis ours). The Court

previously had construed section 924(e)(2)(B)(ii) generally to require a sentencing court to employ a categorical approach focusing on the generic version of an offense (that is, what the elements of the offense required), rather than the defendant's actual conduct, in deciding whether his prior conviction qualified as a violent felony. *See Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143, 2160 (1990). In view of the categorical inquiry mandated by Taylor, two aspects of the residual clause we have italicized led the Supreme Court in *Johnson* to conclude that this clause was impermissibly vague: (1) after postulating the archetypal version of the crime, one had to decide how much risk of physical injury was posed by that idealized version of the offense; and (2) one also had to consider how much risk of injury was required to render an offense violent as compared with the offenses expressly identified in the statute (burglary, arson, extortion, and offenses involving the use of explosives). 135 S. Ct. at 2557–58. Both inquiries were plagued by uncertainty, as evidenced by both the Court's own demonstrated inability in a series of prior residual clause cases to articulate a "principled and objective standard" for identifying crimes that present a serious risk of physical injury, *id.* at 2558, as well as the "numerous splits among the lower federal courts," where the clause had proved "nearly impossible to apply consistently," *id.* at 2560 (quoting *Chambers v. United States*, 555 U.S. 122, 133, 129 S. Ct. 687, 694 (2009) (Alito, J., concurring in judgment)). "Nine years' experience trying to derive meaning from the residual clause convinces us that we have embarked upon a failed enterprise," the Court concluded. "Each of the uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a

task for us which at best could be only guesswork.'" *Id.* (quoting *United States v. Evans*, 333 U.S. 483, 495, 68 S. Ct. 634, 641 (1948)).

In declaring the residual clause to violate the due process clause, the Court expressly rejected the government's contention that an otherwise vague statute is constitutional so long as "there is some conduct that clearly falls within the provision's grasp." *Id.* at 2561. While acknowledging that statements in some of its opinions could be read to support such a rule, the Court emphasized that its prior holdings squarely contradicted such a practice. *Id.* at 2560–61. Simply because it is possible to envision some factual scenarios that would violate an ambiguously-worded statute is not enough to rescue that statute from a vagueness challenge, the Court made clear. *Id.* at 2561.

The Court was also at pains to emphasize, however, that simply because a criminal statute uses qualitative language to articulate a liability standard does not mean that the statute is impermissibly vague, especially when the statute under scrutiny calls upon the court to apply that standard to a concrete set of facts. *Id.* at 2561; *see also id.* at 2558.

> As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct; "the law is full of instances where a man's fate depends on his estimating rightly … some matter of degree," *Nash v. United States*, 229 U.S. 373, 377, 33 S. Ct. 780 (1913). The residual clause, however, re-

quires application of the "serious potential risk" standard to an idealized ordinary case of the crime. Because "the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect," this abstract inquiry offers significantly less predictability than one "[t]hat deals with the actual, not with an imaginary condition other than the facts." *International Harvester Co. of America v. Kentucky*, 234 U.S. 216, 223, 34 S. Ct. 853 (1914).

135 S. Ct. at 2561.

It is not clear how much *Johnson*—and the Court's follow-on decision last term in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which invalidated similar language in the Immigration and Nationality Act—actually expand the universe of litigants who may mount a facial challenge to a statute they believe is vague. Not surprisingly, Cook contends that *Johnson* permits any defendant who can postulate doubts as to what particular conduct a criminal statute does or does not reach to pursue a facial challenge to that statute, without having to show that there is any real question as to whether his own conduct is proscribed. It is true that *Johnson* puts to rest the notion—found in any number of pre-*Johnson* cases[3]—that a litigant must show

---

[3] *See*, *e.g.*, *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); *Johnson*, 135 S. Ct. at 2574, 2581 (Alito, J., dissenting); *Hegwood v. City of Eau Claire*,

(continued...)

that the statute in question is vague in *all* of its applications in order to successfully mount a facial challenge. 135 S. Ct. at 2561. And, as we have mentioned, *Johnson* likewise rejects the notion that simply because one can point to *some* conduct that the statute undoubtedly would reach is alone sufficient to save it from a vagueness challenge. *Id.* So Cook has those aspects of *Johnson* going for him. But so much of the Court's analysis in *Johnson* deals with a statute that is in key respects *sui generis*. In particular, it was the categorical approach called for by the ACCA's residual clause—requiring courts to look not at the actual conduct underlying the defendant's prior conviction but rather at the archetypal version of the offense and then to consider whether the risk of injury posed by that version was sufficient to render the crime violent—which the court found to be particularly vexing. *Id.* at 2557–58. Assessing the degree of risk posed by an idealized "typical" version of an offense was significantly different, as the Court emphasized, from looking at the risks posed by a set of actual, concrete facts. *Id.* at 2558; *see also Dimaya*, 138 S. Ct. at 1214–16.

Cook's appeal, by contrast, presents a much more routine vagueness challenge that highlights some imprecision in the statutory language and posits uncertainty as to whether the statute might apply to certain hypothetical facts. But section 922(g)(3) does not call for the court to engage in any abstract analysis; it calls on the court to apply the statutory prohibition

---

[3] (...continued)
676 F.3d 600, 604 (7th Cir. 2012); *Sherman ex rel. Sherman v. Koch*, 623 F.3d 501, 520 (7th Cir. 2010); *Schor v. City of Chicago*, 576 F.3d 775, 781 (7th Cir. 2009).

to a defendant's real-world conduct. *See United States v. Douglas*, 907 F.3d 1, 11, 14 (1st Cir. 2018), *pet'n for cert. filed*, No. 18-7331 (U.S. Jan. 7, 2019); *Ovalles v. United States*, 905 F.3d 1231, 1233–34, 1252 (11th Cir. 2018) (en banc); *United States v. Barrett*, 903 F.3d 166, 178–79, 182 (2d Cir. 2018), *pet'n for cert. filed*, No. 18-6985 (U.S. Dec. 3, 2018); *United States v. Larson*, — F. App'x —, 2018 WL 4203470, at *2 (4th Cir. Sept. 4, 2018) (per curiam) (unpublished). Moreover, there is, as we have discussed, a readily appreciable core of conduct that the statute reaches: If one regularly uses marijuana or another controlled substance other than as directed by a physician, he may not possess a firearm so long as the use persists. Consequently, citizens who wish to exercise their Second Amendment rights and law enforcement officials alike have reasonable notice of what is prohibited. This is not a "hopelessly indeterminate" statute that leaves everyone to guess what conduct is legal and what conduct is proscribed.[4] The statute, as construed by

---

[4] We recognize that a liability standard turning on the regularity of a particular activity can in some instances present a vagueness problem. *See Whatley v. Zatecky*, 833 F.3d 762 (7th Cir. 2016) (finding impermissibly vague statute specifying enhanced sentence for individual possessing controlled substance within 1000 feet of "youth program center," defined as any building that provides youth-oriented programs or services " on a regular basis"). In contrast to *Whatley*, the statute at issue here is not a strict-liability provision, and one's liability under section 922(g)(3) turns on the regularity of one's own conduct rather than the activity occurring in a building that may exhibit no indicia of what programs and services are provided therein and how often. One who uses a controlled substance necessarily knows how often he does so. And whatever doubt there might be as to when one's drug use becomes regular, Cook as a daily user of marijuana over the

(continued...)

*Yancey*, does incorporate a qualitative liability standard, and one can posit, as Cook does, hypothetical scenarios which present close questions as to whether an individual's use of a controlled substance is unlawful, whether it qualifies as regular and ongoing, and/or whether that use is sufficiently contemporaneous with his or her possession of a firearm. But in contrast with the residual clause, there is no judicial history of courts struggling to appreciate what particular conduct Congress meant to reach with section 922(g)(3) or to apply the statutory terms to varying sets of facts. The uniform rejection of as-applied vagueness challenges to section 922(g)(3) by itself suggests that it is not anything like the sort of problematic statute the Court confronted in *Johnson*. *See United States v. Bramer*, 832 F.3d 908, 909–10 (8th Cir. 2016) (per curiam); *United States v. Edwards*, 540 F.3d 1156, 1162 (10th Cir. 2008); *United States v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005); *United States v. Purdy*, *supra* n.4, 264 F.3d at 812. And simply because it may sometimes be difficult to determine if an individual's drug use meets section 922(g)(3)'s standard for liability does not signify that the statute is impermissibly vague, given that there is no doubt as to the essence of what the statute forbids: the possession of a firearm by one who is engaged in the regular and ongoing use of a controlled substance other than as prescribed

---

[4] (...continued)

course of a decade cannot reasonably claim to have been in doubt as to whether his use qualified as regular. *See United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001) ("Purdy's [regular, years-long] drug use … was sufficient to put him on notice that he fell within the statutory definition of 'unlawful [drug] user.'").

by a doctor. *See Williams, supra*, 553 U.S. at 306, 128 S. Ct. at 1846.

For these reasons, we are not convinced that Cook is entitled to mount a facial vagueness challenge to section 922(g)(3). *Johnson* did not alter the general rule that a defendant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge. *United States v. Westbrooks*, 858 F.3d 317, 325–26 (5th Cir. 2017) (collecting cases), *cert. granted & judgment vacated on other grounds*, 138 S. Ct. 1323 (2018). Cook's conduct, if anything, undoubtedly falls within the obvious core of conduct proscribed by the statute. Per his statement at the police station, he had been using marijuana daily for almost ten years and he had smoked two blunts on the day of his arrest; and the police officers who stopped his vehicle and took him into custody noted a strong odor of marijuana emanating from the interior and that Cook himself reeked of the substance. These facts no doubt explain why Cook has declined to pursue an as-applied vagueness challenge to section 922(g)(3): it would surely fail. *See United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002) (addressing facts nearly identical to those presented here) ("While we do not doubt that the exact reach of the statute is not easy to define, we agree with the government that this is not a border-line case. … Given the evidence, Jackson violated the plain meaning of the statute.").

Cook's attempt to challenge section 922(g)(3) as facially vague fails for all of the reasons we have discussed, and because he asserts no as-applied challenge to the statute, we reject his contention that the statute is inconsistent with his due process rights.

B.  Second Amendment

Cook agrees that *Yancey* forecloses this challenge to section 922(g)(3). *Yancey*, as noted, held that there was a substantial relationship between the government's legitimate interest in preventing violent crime and the statute's ban on gun possession by unlawful drug users. 621 F.3d at 683–87. Although Cook asserts that *Yancey* was wrongly decided, he offers us no real reason to reconsider our precedent on this point. As the law is settled in this circuit, we reject his Second Amendment objection to the statute.

C.  Jury Instruction

Cook argues finally that the district court did not properly instruct the jury as to the elements of his offense. As we noted in our summary of the proceedings below, the court advised the jury that "[t]he defendant was an unlawful user of marijuana if he used marijuana on a regular and ongoing basis for a period of time that began before and continued through the date of the offense." R. 44 at 8; R. 56 at 70–71 (emphasis omitted). The court added that Cook need not have been under the influence of marijuana when he possessed a firearm, nor was the government required to prove that he used marijuana on any particular date or within a specified number of days of the offense. (Recall that Cook had rejected the government's offer to add language that use of marijuana on a single occasion was insufficient to establish unlawful drug use.) Cook contends that the instruction as given was erroneous because (a) it was not grounded in the language of section 922(g)(3); (b) it was not consistent with *Yancey*'s holding as to who constitutes an unlawful drug user; (c) the instruction was

internally inconsistent; and (d) it foreclosed the defense from urging the jurors to use their own understanding of "unlawful user" in assessing Cook's conduct. None of these arguments is persuasive.

The instruction was grounded in the language of the statute in that it endeavored, consistent with the case law regarding section 922(g)(3), to define for the jury who constitutes an unlawful drug user. The statute itself does not define "unlawful drug user." As discussed, this court in *Yancey* concluded that an unlawful drug user is one who regularly uses a controlled substance, other than as prescribed by a physician, contemporaneously with possessing a firearm. 621 F.3d at 682, 687. In doing so, we acted in accord with other circuits which have concluded that the statute's reach is limited by two key requirements: (1) regularity of drug use (2) that is sufficiently contemporaneous with the possession of a firearm. *See id.* (collecting cases). That these are limits imposed on the offense by the judiciary rather than the face of the statute does not render them invalid. *See United States v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 1225 (1997) ("clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute") (collecting cases); *Skilling*, *supra*, 561 U.S. at 405–06, 130 S. Ct. at 2929–30 (before striking down a federal statute as vague courts will first consider if it is subject to a limiting construction that avoids vagueness); *id.* at 409 n.43, 130 S. Ct. at 2931 n.43 ("cases 'paring down' federal statutes to avoid constitutional shoals are legion"). The district court appropriately looked to *Yancey*'s gloss on the statute in defining "unlawful drug user" for the jury.

Nor was the instruction inconsistent with *Yancey*. Cook suggests that *Yancey* defined "unlawful user" of drugs to mean either one who is addicted to controlled substances or one who has simply used them within the past year, and that the reference to "regular and ongoing" drug use in the district court's instruction is both broader than addiction and narrower than use within the past year. But Cook's reading of *Yancey* is not a faithful reading of the court's opinion. The opinion makes clear that section 922(g)(3) requires *regular* or *habitual* drug use, 621 F.3d at 682, that is contemporaneous with the possession of a firearm, *id.* at 687. Nowhere in our decision did we suggest that a single or occasional, irregular use of a controlled substance within a year of the gun possession was sufficient to meet these criteria. Nor did we indicate that regular or habitual use necessarily equates with addiction. The instruction given here was fully consistent with *Yancey*'s requirements: the term "regular" connotes a pattern of repeated drug use (be it volitional *or* as the result of an addiction), and "ongoing" connotes the requisite temporal nexus with possession of the gun.

The instruction was also internally consistent. Cook's contention to the contrary focuses on the fact that the instruction advised the jury, on the one hand, that his marijuana use must have "beg[u]n before and continued through the date of the charged offense" but, on the other hand, that he need not have "used marijuana on any particular day, or within a certain number of days of when he committed the charged offense." These portions of the instruction were not at odds with one another. Consistent with *Yancey*'s requirement that the defendant's drug use be contemporaneous with his

possession of a firearm, the court appropriately advised the jury that Cook's marijuana use must have been "ongoing" at the time he was discovered in possession of a gun. But the requirement that the drug use and firearm possession be contemporaneous does not literally mean that the defendant must have been ingesting (or under the influence of) a controlled substance at the same time as he possessed the gun. The statute, after all, prohibits firearm possession by a drug *user*, not simply possession during drug *use*. So long as the defendant was still engaged in the regular use of a drug at the time of his firearm possession, it is not necessary to show that he used the drug on the day of his firearm possession, the day before, or within any particular number of days of the possession. Thus, a person who routinely uses marijuana on weekends may violate section 922(g)(3) by possessing a firearm on a Tuesday or Wednesday, because his possession of the gun is contemporaneous with his ongoing pattern of drug use. The instruction appropriately and coherently advised the jury on these points.

Finally, we are no more persuaded than the district judge was that the instruction should have left it to the jurors to consult their own collective sense of who constitutes an "unlawful user" of marijuana. *Yancey* establishes the relevant parameters on this point, and the district court was required to convey those parameters to the jury to guide its decisionmaking, which Judge Peterson did admirably.

That said, our holding should not be construed to foreclose alternate versions of the "unlawful user" instruction. The Sixth and Eighth Circuits, for example, have promulgated instructions with slightly different language. *See* MANUAL OF MODEL

CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE EIGHTH CIRCUIT § 6.18.922B, at 291–94 (2017); *United States v. Burchard*, 580 F.3d 341, 352 (6th Cir. 2009). Although the arguments in this court and in the court below reflect some anticipation that we might settle upon our own preferred version of the instruction in this appeal, we respectfully decline to do so. As the foregoing discussion makes clear, we find no fault with the particular instruction that Judge Peterson gave to the jury, and we need not go farther than that to resolve Cook's appeal. The task of drafting a model instruction, we believe, is better left to our Circuit's Pattern Criminal Jury Instruction Committee, which has a membership that includes practitioners as well as judges and which can solicit and incorporate comments on any proposed instruction from the bar at large. We shall invite the Committee to consider a pattern instruction for a section 922(g)(3) charge, including but not limited to the issue of who constitutes an "unlawful user" of a controlled substance for purposes of this statute.

### III.

For all of the foregoing reasons, we AFFIRM Cook's conviction. We commend everyone involved in the briefing and arguing of this case, along with Judge Peterson and Magistrate Judge Crocker for their thorough and careful handling of the case below. Their dedication and hard work have greatly aided this court's deliberation and resolution of the appeal.